## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALEXIS ROLON AYALA,

     Petitioner,

v.                             CASE NO:  8:08-CV-1828-T-30EAJ
                                     Crim. Case No: 8:04-CR-457-T-30EAJ

UNITED STATES OF AMERICA,

     Respondent.

_____/

## ORDER

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) filed on 9/15/2008, the Government's Response thereto (CV Dkt. #4) filed on 11/18/2008, and Petitioner's Reply (CV Dkt. #5) filed on 12/08/2008.

## BACKGROUND

Petitioner, Alexis Rolon Ayala (hereinafter referred to as "Mr. Ayala", "Mr. Rolon", or "Petitioner") and nine others were indicted with one count of conspiracy to possess with intent to distribute one kilogram or more of heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(I) (Count One).  Petitioner was charged with two additional counts of distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2 (Counts Seven and Eight).

Petitioner's brother, Ismael Rolon Ayala, managed a heroin distribution network in the Bradenton/Sarasota area from mid-2001 through September 2004. Ismael Rolon Ayala obtained approximately 100 grams of heroin per week from an unindicted co-conspirator between January and December 2001. Sometime around January 2002, Ismael Rolon Ayala met Jean Carlos Mejias Castro and Castro began supplying Ismael Rolon Ayala with varying amounts of heroin from the time they met until Ismael Rolon Ayala's arrest in September 2004.

It is estimated that Ismael Rolon Ayala's heroin organization distributed between 18.4 and 28.4 kilograms or heroin throughout the conspiracy. After obtaining heroin, Ismael Rolon Ayala would divide it into 100 gram increments and then further separated into bundles. Each bundle contained 60 bags of heroin. According to the PSI report, there were approximately 18-20 bundles made from each 100 gram increment. Each bundle weighed 5 grams. A bundle was fronted by Ismael Rolon Ayala to a distributor for $900. Each distributor kept whatever amount they earned over and above the $900 they eventually paid to Ismael Rolon Ayala for the fronted heroin.

Petitioner sold heroin for Ismael Rolon Ayala throughout the term of the charged conspiracy, beginning in mid-2001, through September 2004. Petitioner sold heroin to an undercover officer on two separate occasions. The first time, on August 17, 2004, he sold four bags containing approximately .5 grams for $80, and on August 24, 2004, he sold five bags containing approximately .7 grams for $100.

On January 7, 2005, a notice of maximum penalty, elements of offense, personalization of elements, and factual basis was filed by the government as to Petitioner. On January 7, 2005, at the change of plea hearing, Petitioner's counsel made an oral motion for a competency evaluation. The court orally granted Petitioner's motion.

On January 13, 2005, Magistrate Judge Mary S. Scriven issued an order for Dr. Alfonso Saa to conduct a competency evaluation to determine Petitioner's competency to proceed in this case. On March 3, 2005, a hearing was held in order to determine Petitioner's competency. On March 4, 2005, Magistrate Judge Mary S. Scriven ordered that Petitioner be committed to the custody of the Attorney General for mental health treatment for a period not to exceed three months. On July 20, 2005, a second competency hearing was held, in which, the parties stipulated to the competency evaluation report issued by Dr. Ralph Newman and Dr. Edward E. Landis, III, dated June 29, 2005, that Petitioner was mentally competent to stand trial. On the same date, Magistrate Judge Elizabeth A. Jenkins issued an order finding that Petitioner was competent.

On August 19, 2005, the government again filed a notice of maximum penalty, elements of offense, personalization of elements and factual basis as to Petitioner. On August 23, 2005, a change of plea hearing was held and Petitioner pled guilty to Counts One, Four and Five of the Second Superseding Indictment without a written plea agreement. On January 27, 2006, Petitioner was sentenced to 262 months imprisonment on Count One of the Second Superseding Indictment, and 240 months on Counts Four and Five to run concurrently with the sentence imposed in Count One, 60 months supervised release as to

Count One and 36 months supervised release as to Counts 4 and 5, to run concurrently with Count One, and a $300 special assessment.

On February 8, 2006, Petitioner appealed his conviction and final judgment to the Eleventh Circuit Court of Appeals. Petitioner argued that the District Court erred by establishing his advisory sentencing guidelines based upon its own fact findings, by finding that he had not been a minor participant in his offenses, and in imposing an unreasonable sentence based on its consideration of the 18 U.S.C. § 3553(A) factors. On May 10, 2007, the Eleventh Circuit affirmed Petitioner's conviction. See United States v. Salazar, 245 Fed. App'x 1 (11th Cir. 2007).  On October 15, 2007, the United States Supreme Court denied certiorari. On September 15, 2008, Petitioner timely filed this Section 2255 motion.

## DISCUSSION

Petitioner raises six grounds in support of this Section 2255 motion to set aside and vacate his sentence.

**Ground One**:     Counsel was constitutionally ineffective for failing to conduct an independent psychiatric evaluation of Mr. Ayala where Mr. Ayala had previously been treated for mental problems and was incompetent.

In support of ground one, Petitioner asserts that he has been treated for mental problems since the age of five, that he told the court that he was not taking medications when he was, that his attorney failed to investigate a letter from the Department of Education which stated that, "Mr. Ayala cannot comprehend what he reads . . . ", and finally that Dr. Alfonso Saa submitted a sealed report finding that Mr. Ayala was incompetent to stand trial as of March 2005.

Petitioner has offered no demonstrable proof that he was incompetent at the time of entering his guilty plea on August 23, 2005.  Past treatment for mental illnesses and having reading comprehension problems are not proof of incompetence.  "The legal standard for mental competency to stand trial or plead guilty is that a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him or her." United States v. McDowell, 2006 U.S. Dist. LEXIS 93985, at *2 (M.D. Fla. Dec. 29 2006).  Additionally, "[c]ourts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial [or plead guilty] where the facts are not sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to the mental capacity of the petitioner" Poremski v. McNeil, 2008 U.S. Dist. LEXIS 33344, at *32 (M.D. Fla. Apr. 23 2008).  The competency standard for pleading guilty is the same as the competency standard for standing trial. Godinez v. Moran, 509 U.S. 389, 113 S. Court. 2680, 125 L. Ed. 2d 321 (1993); Stinson v. Wainwright, 710 F.2d 743, 745 (11th Cir. 1983); Malinauskas v. United States, 505 F.2d 649, 654 (5th Cir. 1974).

> If a defendant's competence is reasonably in dispute, the Court should hold a hearing to determine whether a preponderance of the evidence [demonstrates] that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. . . . The presence of a mental disorder, a low level of intelligence, erratic behavior, or the fact that a defendant has been treated with anti-psychotic drugs does not necessarily render a defendant

> incompetent.  In assessing a defendant's competency, a court must consider a defendant's past medical history, the opinion of psychiatric experts, and the defendant's behavior during trial.

United States v. Mason, 2008 U.S. Dist. LEXIS 869, at *4 (M.D. Fla. Jan. 6 2008).

In the instant case, a competency hearing was held, after Petitioner had been afforded mental health treatment, and two medical doctors with the Federal Bureau of Prisons found Petitioner competent to stand trial.  The parties stipulated to these findings.  Petitioner has offered nothing, as of the time of the guilty plea hearing, to contradict these findings other than his own conclusory statements, which are insufficient to overcome Petitioner's sworn statements before the court.

To sustain a claim of ineffective counsel, a Petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonable professional assistance and he was prejudiced by the deficient performance.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take."   Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000).  "The burden of persuasion is on the petitioner to prove by a preponderance of competent evidence, that counsel's performance was unreasonable." Id. at 1313.  "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (quoting Burger v. Kemp, 483 U.S. 776 (1987)).  It is not unreasonable for an attorney to rely on the professional opinion of two medical

doctors.  Further, during the plea hearing on August 23, 2005, the court asked Petitioner the

following questions and Petitioner gave the following answers (Doc. 527 at 18-20):

> THE COURT:    . . . Count 1 charges that from a date unknown but at least beginning in 2001 through on or about September 23, 2004 in Manatee and Sarasota Counties in the Middle District of Florida, you and . . . other individuals . . . conspired . . . to possess with intent to distribute . . . one kilogram or more of a substance containing a detectable amount of heroin, a Schedule I controlled substance, in Title 21 United States Code Section 812, contrary to the provisions of Title 21 United States Code Section 841, all this is in violation of Title 21 of the United States Code, Section 846 and 841.
>
> So this is a conspiracy.  You are charged with agreeing to commit a crime, and under U.S. laws the agreement to commit a crime, if you join in it is a crime. Do you understand that?
>
> DEFENDANT AYALA:    Yes.
>
> . . . .
>
> THE COURT:    Have you had a chance to review all of these charges fully including the indictment with you attorney?
>
> DEFENDANT AYALA:    Yes.
>
> THE COURT:    Have you had all the time you need with your attorney to decide what is best for you to do in this case?
>
> DEFENDANT AYALA:    Yes.
>
> THE COURT:    Have you had a chance to learn of the evidence against you?
>
> DEFENDANT AYALA:    Yes.
>
> THE COURT:    Are you completely satisfied with the advice and representation he has provided you?
>
> DEFENDANT AYALA:    Yes.

The court advised Petitioner (referred to in the transcript as "Mr. Rolon") to listen

carefully when the prosecutor tells the judge about the facts because the judge will question

him about them.  Doc. 527 at 45.  Ms. Croff (the prosecutor) then recited the facts in support

of Counts One, Four, and Five of the Indictment. Doc. 527 at 45, 46, 47.  The court then

asked Petitioner if he had any disagreement with the facts.  Doc. 527 at 47.  Petitioner stated,

"No." Id. Following a brief recess, this exchange took place (Doc. 527 at 58-9):

| | |
|---|---|
| MS. CROFF: | Just for the record I would like to proffer that during the course of the charged conspiracy of which Mr. Ayala was a member of, he distributed and possessed with intent to distribute at least one kilogram of heroin. |
| THE COURT: | He personally did that? |
| MS. CROFF: | Yes, Your Honor. |
| THE COURT: | Mr. Rolon, did you hear those additional facts stated by the prosecutor? |
| DEFENDANT AYALA: | Yes. |
| THE COURT: | Do you have any disagreement with those facts? |
| DEFENDANT AYALA: | No. |
| THE COURT: | Are they true? |
| DEFENDANT AYALA: | Yes. |
| THE COURT: | At this point do you have any questions at all about the consequences of your guilty plea, or the rights you are giving up? |
| DEFENDANT AYALA: | No. |
| THE COURT: | How do you wish to plead to Count 1 of the indictment, the conspiracy? |
| DEFENDANT AYALA: | Guilty. |
| THE COURT: | Are you pleading guilty, sir, because you are guilty? |
| DEFENDANT AYALA: | Yes, because I am guilty. |

The statements made by Petitioner in open court are presumed true.  United States v.

Gonzolez-Mercado, 808 F.2d 796, 799-800 (11th Cir. 1987).  A defendant will not be heard

to disavow them at some later time in an attempt to overcome his guilty plea.  Harvey v. United States, 850 F.2d 388, 396-98 (8th Cir. 1988). Here, Petitioner was properly advised of both the elements of the offense and the underlying factual basis, and he acknowledged his understanding and agreement.  His bald assertions of misunderstanding are unavailing. Harvey, at 396. The record clearly demonstrates that Petitioner entered his guilty plea voluntarily.  He has failed to provide sufficient evidence to prove incompetence or to meet the *Strickland* test for ineffective counsel.  Therefore, ground one will be denied.

**Ground Two**:  Counsel was constitutionally ineffective for promoting Mr. Ayala to agree to the factual basis of the guilty plea based on Count One when counsel knew that Mr. Ayala never engaged in a drug trafficking crime in the amount charged in count one of the indictment and counsel used erroneous inducements he knew to be false to induce the plea.

In support of ground two, Petitioner contends that the guilty plea was not voluntarily or intelligently entered because his attorney advised him that if he agreed to the 1-kilogram conspiracy that he would receive a sentence between five to seven years.

A guilty plea is valid when a court adequately explains to a defendant the elements of the charges and the factual basis which the government contends will be proven at trial. That was done in this case (see discussion of ground one).  Additionally, at the plea hearing, the Magistrate Judge asked Petitioner the following questions and Petitioner gave the following responses:

THE COURT:  Mr. Rolon, the Attorneys don't know of any verbal agreement, so I need your help.  Did somebody promise you something not in writing to get you to plead guilty?  Doc. 527 at 17.

DEFENDANT AYALA:    No. <u>Id.</u>

                                    . . . .

THE COURT:          Back to Mr. Rolon.  Has anybody threatened you mentally or
                    physically in your decision to plead guilty?  Doc. 527 at 31.

DEFENDANT AYALA:    No.  Doc. 527 at 32.

THE COURT:          For Mr. Rolon, Count 1 of the second superseding indictment
                    carries a mandatory minimum sentence of ten years and a
                    maximum of life imprisonment, a fine of up to four million
                    dollars, a term of supervised release of at least five years, and a
                    special assessment of one hundred dollars due at sentencing. Do
                    you understand that, sir?  Doc. 527 at 33.

DEFENDANT AYALA:    Yes. <u>Id.</u>

                                    . . . .

THE COURT:          . . . Now, have each of you talked to your attorney prior to today
                    about how these sentencing guidelines might work out in your
                    case?  Doc. 527 at 36.

DEFENDANT AYALA:    Yes. <u>Id.</u>

THE COURT:          And as I have said before, and I repeat this, if your sentence is
                    different from what you expect, including with regard to the
                    Guidelines, you can't change your mind about pleading guilty
                    about that point.  Do you understand that?  <u>Id.</u>

DEFENDANT AYALA:    Yes. <u>Id.</u>

THE COURT:          Once the Court has determined the guidelines range for your
                    case, the Court has this authority to impose a higher sentence,
                    called an upwards departure, or a less harsh sentence called a
                    downwards departure from the Guidelines. Do you understand?
                    <u>Id.</u>

DEFENDANT AYALA:    Yes. <u>Id.</u>

The court asked Petitioner if he was promised anything in return for his plea of guilty

and Petitioner answered 'No'.  Doc. 527 at 31-2.  Petitioner was then advised that the court

has discretion in determining his sentence and that his sentence might be different than he

expected.  Doc. 527 at 36.  Petitioner will not now be heard to disavow his statements made

under oath.   Harvey v. United States, 850 F.2d 388, 396-98 (8th Cir. 1988).  This ground
will be denied.

**Ground Three**:        Counsel was ineffective for failing to challenge the prior conviction
used as predicate offense to place Mr. Ayala into the Career Criminal
Offender provision where PSR used the initial charging instrument, but
Mr. Ayala pled to reduced charges.

In support of ground three, Petitioner asserts that his attorney didn't object to the
predicate offenses used to categorize him as a Career Offender.  This Court made factual
findings that two burglaries listed in the PSR at paragraphs 59 and 60 qualified as predicate
offenses for the Career Offender Provision. See (S.Tr. P.15).  Petitioner asserts that the prior
conviction listed in paragraph 59 was reduced from burglary to Tenativa Escalamiento which
is a lesser included charge.  Petitioner contends that the charging statute is ambiguous and
that under Eleventh Circuit precedent, neither of these two burglary charges qualify as a
predicate offense for the Career Criminal Offender Provision.  Petitioner's claim is factually
inaccurate.  The record in this case shows that Petitioner's counsel did challenge Petitioner's
prior convictions as qualifying offenses.

The Court asked whether there were any objections to the guidelines as to the career
offender status. Doc. CR-520  at 10.  Attorney Christian told the Court that he did have
objections to the career offender classification and that he promised Petitioner that he would
object to it. Id.  Mr. Christian proceeded to tell the Court that he explained to Petitioner that
if the Court found that Petitioner was a career offender based on his prior convictions, that
he was looking at in excess of 21 years. Id. at 11.  Mr. Christian also told the Court, "I cannot

in good faith represent to this Court that somebody who has pled guilty to a drug-trafficking offense and has two prior convictions of burglaries, which are considered career offender predicate offenses under 4B1.2, Section (1)(2), are not requisite offenses." Id. at 11.

The Court then made inquires of the probation officer as to what information he had to support the career offender classification. Id. at 11-12.   The probation officer outlined the documents he received from the District of Puerto Rico which would support career offender status. Id. at 12.  The probation officer stated, "... and Defendant outlined that he was, in fact, a career offender." Id.  The probation officer added that Petitioner actually had four prior offenses because domestic violence is a felony in Puerto Rico and the guidelines required only two prior offenses for career offender status. Id. The probation officer reiterated several times during the discussions at sentencing regarding prior convictions that he spoke with the probation officer in the District of Puerto Rico and was assured that the two convictions cited in the PSR were, in fact, felonies under Puerto Rico law.

In United States v Gonzalez, No. 07-16015 (11th Cir. 2008), the Eleventh Circuit stated again that:

> The Supreme Court has explicitly held that the government need not allege in its indictment nor prove beyond a reasonable doubt to a jury that a defendant had prior convictions in order for a district court to use those convictions to enhance a sentence. Almendarez Torres v. United States, 523 U.S. 224, 226-227, 118 S. Court. 1219, 1222 (1998).  Further, in United States v. Shelton, 400 F.3d 1325, 1329 (11th Cir. 2005), we held that the decision in Almendarez-Torres was 'left

undisturbed' by the decisions in <u>Apprendi</u>, <u>Blakey v. Washington</u>, 543 U.S. 220, 125 S Court. 738 (2005), so that 'a district court does not err by relying on prior convictions to enhance a defendant's sentence.'

The record supports the fact that counsel for Petitioner argued the prior conviction issue and career offender status at sentencing.[1]  An attorney is not ineffective just because he does not win an argument.  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). Therefore, ground three will be denied.

**<u>Ground Four</u>**:     <u>Counsel Christian misrepresented material facts to this Court during the guilty plea proceeding that Mr. Ayala also went by the name "Flaco" who is Mr. Ayala's brother and the head man of the alleged conspiracy which was subsequently used against Mr. Ayala.</u>

In support of ground four, Petitioner asserts that during the plea colloquy Counsel Christian mistakenly referred to Petitioner by the nickname "Flaco" which was his brother's nickname, rather than his nickname "Peca."  Flaco was the leader of the conspiracy and Petitioner contends that most of the evidence presented during the plea colloquy was against Flaco.  Petitioner argues that the drug quantity applicable to Flaco was mistakenly applied to him because of his counsel's mistake in calling him Flaco.

The record reflects that, during the sentencing hearing, counsel Christian requested the Court to sentence Petitioner as a minor participant in the conspiracy.  Doc. CR-520 at 15.  The Court acknowledged the objection but said "all right.  I find that he [Petitioner] was

---

[1] See the sentencing colloquy in the discussion of ground six herein.

not the Kingpin, leader, but he was not a minor participant either.  So, I deny that." Doc. CR-

520 at 17.   Additionally, the nickname Flaco is correctly attributed to Petitioner's brother

in the PSI report.  Clearly, based on the record, the Court was not confused with Petitioner

being Flaco, the head man of the conspiracy.   Therefore, ground four will be denied.

**Ground Five**:　　　　There is insufficient evidence to support a conviction on Count One
where there is no factual basis establishing the essential elements of the
offense on the record during the guilty plea colloquy requiring the plea
to be set aside and the conviction vacated.

　　　In support of ground five, Petitioner contends that his sentence must be vacated

because the United States failed to establish on the record that Petitioner conspired to possess

and distribute one-kilogram or more of heroin with any other co-defendant charged in the

indictment and as a result the conviction must be set aside as a violation of due process.

　　　As previously stated, during the plea hearing on August 23, 2005, Petitioner admitted

his guilt relating to the specific charges of Count 1. See Doc. 527 at 58-59.  The statements

made by Petitioner in open court are presumed true.  United States v. Gonzolez-Mercado,

808 F.2d 796, 799-800 (11th Cir. 1987).  A defendant will not be heard to disavow them at

some later time in an attempt to overcome his guilty plea.  Harvey v. United States, 850 F.2d

388, 396-98 (8th Cir. 1988).  Petitioner's factual admissions supported all elements of the

charged offenses.  See Doc. 527 at 58.  Therefore, ground five will be denied.

**Ground Six**:         Counsel was constitutionally ineffective for failing to object to the inaccurate information used to determine the drug quantity and the prosecutions failure to provide the defense with a copy of the co-defendant's trial transcripts which were used against Mr. Ayala during sentencing to establish the drug quantity.

In support of ground six, Petitioner contends that he was deprived of due process of law by the Court relying on a co-defendant's trial testimony to determine Petitioner's drug quantity without supplying Petitioner a copy of the trial transcript.  Contrary to Petitioner's assertion, his sentence was ultimately calculated on his status as a Career Offender, not on drug quantity.

Part A, page 2 of the PSI report, under 'Offense Conduct', states that, "[b]ased on the aforementioned figures, it is estimated that the Ayala organization distributed between 18.4 kilograms of heroin and 28.4 kilograms of heroin throughout the conspiracy.  During the sentencing hearing, January 27, 2006, the following exchange took place (Doc. 520 at 5-15):

THE COURT:          Mr. Ayala, have you had a chance to discuss the pre-sentence report with your lawyer?

DEFENDANT AYALA:    Yes Sir.

THE COURT:          Do you have any objections to the factual accuracy of the report?

DEFENDANT AYALA:    How is that?

THE COURT:          Is the pre-sentence report correct?

DEFENDANT AYALA:    No. No, it's not correct.

THE COURT:          Are there any facts in the report that are not correct?

DEFENDANT AYALA:    Well, I'd say that if they're there, they're correct.

THE COURT:          Are there any facts there that are not correct?

DEFENDANT AYALA:    No. It's correct.

THE COURT:          Okay. Do you or your attorney wish to make any objections to the probation officer's application of the guidelines?

DEFENDANT AYALA:    Yes.

THE COURT:          You can may make those now, or your attorney can make them.

DEFENDANT AYALA:    Yes.

THE COURT:          Mr. Christian, would you like to make any objections to the guidelines?

MR. CHRISTIAN:      Well, yes, but I'm not sure if Mr. Ayala wants me to at this point.  If he'd like me to proceed, I will; or if the Court orders me to, I will.

THE COURT:          Well, I haven't heard anything to the contrary.  Mr. Ayala, would you like Mr. Christian to make the objections to the guidelines?

DEFENDANT AYALA:    Yeah.

THE COURT:          Okay.

MR. CHRISTIAN:      Your, Honor, as to the amount that Mr. Ayala is being held responsible for – and this is under the offense level computation, Your Honor – Paragraph 35, Mr. Ayala objected to the proffered facts at the guilty-plea hearing; and after the off-the-record discussions, he agreed on the record that during the course of the – the conspiracy, that he was responsible for moving 1 kilogram of heroin.

THE COURT:          You say moving 1 kilogram?

MR. CHRISTIAN:       Well, 1 kilogram of heroin, Your Honor.   That was his involvement. That was his involvement.

THE COURT:          Okay. He's not saying that was the overall conspiracy involvement; just his involvement?

MR. CHRISTIAN:      His involvement was 1 kilogram.

THE COURT:          All right.

MR. CHRISTIAN:      That was what was from the transcript.  Would you like to hear anything from the transcript if I put it on the record?

THE COURT:          Not yet; because if he's charged with conspiracy, I'm not sure it makes any difference.

MR. CHRISTIAN:      Well, Your Honor, he – would not agree to the stipulated facts that he was involved in the conspiracy or that he was aware of

anything more than 1 kilogram.

THE COURT:          But he pled guilty to Count 1, which charged him with conspiracy; right?

MR. CHRISTIAN:    That's right, Your Honor.

THE COURT:          So, what you're saying is that the Government needs to prove the quantity since quantity is not contained in his admission?

MR. CHRISTIAN:    Correct, Your Honor.

THE COURT:          All right.  What says the Government?

MS. PELUSO:        Your Honor, you were present during the entire trial in this case --

THE COURT:          Yes.

MS. PELUSO:        – that took place last March, and we would submit that the testimony at trial certainly supported all the facts in the probation report prepared by the probation officer.  If you recall, the jury found that the conspiracy specifically – during the course of the conspiracy, the organization distributed or possessed with intent to distribute between 10 and 30 kilograms.  They specifically found that guideline range in their verdict

And also, throughout the testimony at the trial, mostly all the witnesses identified Mr. Alexis Ayala as being involved from the very beginning, selling the heroin out of the garage locations, all the way up until August of 2004 where he actually sold twice to an undercover.

He was present in 2003 when the Manatee County Sheriff's Office executed two search warrants at the garage location and found heroin and guns and bullets and all kinds of other paraphernalia where he was actually distributing out of that location.  So, he's certainly responsible from the very beginning.  He should be responsible for the relevant conduct during the course of the conspiracy, and we believe he should be held responsible accordingly from the – from 18.4 kilograms to 28.4 kilograms that was determined by the probation officer.

THE COURT:          All right.  I do remember the testimony at trial, and the finding by the jury was conservative, Mr. Christian; but at the very least, he's bound by the jury finding, isn't he?

Mr. CHRISTIAN:    I'm sorry, the last part about the jury finding?

THE COURT:        At the very least, he's bound by the quantity found by the jury, isn't he?

MR. CHRISTIAN:    I would submit no, Your Honor, and I would submit that he did not agree to that, and that's not what he pled guilty to.  There's only 1 kilogram that he stipulated to at the guilty-plea hearing; and I note for the record, Your Honor, in explanation – in support of this, Mr Ayala was apprehended in two separate offenses where he sold to an undercover for a total of 1.2 grams in exchange for $180 in U.S. currency.

                    Now, if you divide 1 kilogram – if you divide 1.2 into 1 kilogram, it would take 833.33 similar transactions to even equal a kilogram.

                    Mr. Ayala's involvement in this conspiracy was 1 kilogram or less, Your Honor, and that's it, and he should not be held responsible for any more; and that's what he pled guilty to, and those were our objections, and we stand on that position, Your Honor.

THE COURT:        All right.  I find that the calculations in the guidelines are correct and are supported by the facts at trial and the jury's finding.  I'm not sure it makes any difference if he's a career offender, does it?

MR. CHRISTIAN:    If you find he's a career offender, it's not going to make a difference.  The purpose of the objection was that at the time the objections were filed, it was not clear whether or not these records were going to be produced.

THE COURT:        All right.  There's no objection to the guidelines on the career offender, is there?

MR. CHRISTIAN:    Your Honor, I've spoken with Mr. Ayala.  Mr. Ayala says he wants to address the Court that, you know, I need to get career offender off of him; and I promised him I would do it, et cetera, et cetera.  Those aren't the facts.  I explained to him that there's a possibility he could be held responsible as a career offender; but if we could limit his responsibility to the amount of the cocaine for which he accepted responsibility for, he could possibly get a sentence of ten years or possibly even less, depending upon other factors.

                    However, I told him if he was to be a career offender, then he was looking at in excess of 20 years; and the sentence at

the low end of the guideline range is approximately 21 years.

Now, I've spoken with Mr. Ayala, and he says that these – these offenses like the ones for five years and eight years that he was convicted of, were burglaries that weren't in fact, him. He recalls one for five, but he doesn't recall the one for eight; but, you know, he says if it's there, it must be there. It must have been him. Of course, he didn't do exactly that much time. I think those sentences were mitigated later on, from what I read, the interpretation. Maybe Mr. Hauser can enlighten us on that if I'm misspeaking, but two offenses for burglary are clearly predicate offenses for a career offender.

I cannot in good faith represent to this Court that somebody who has pled guilty to a drug-trafficking offense and has two prior convictions for burglaries, which are considered career offender predicate offenses under 4B1.2, Section (a)(2), are not requisite offenses.

THE COURT:        All right.   Mr. Hauser, what information do we have that supports the career offender?

PROBATION OFFICER:   Your Honor, as outlined in the addendum, it took some time to get the court documents here from the District of Puerto Rico.   Wednesday I received that.   It was in Spanish.  I had a Spanish-speaking probation officer in this district, as well as the one from Puerto Rico, interpret that; and I also had an interpreter for the Middle District of Florida translate that.

So, all the parties have got the original Spanish documents, as well as the translation.  It was sent to the Court and to both counsel and Defendant; and Defendant outlined that he was, in fact, a career offender.  I would add that domestic violence is a felony in Puerto Rico. So, he actually has four.  But the guidelines require two, and he definitely has that.

THE COURT:        All right.

MR. CHRISTIAN:    Your Honor, in that last comment by Mr. Hauser about the domestic-violence offense being considered felonies, I would ask for some offer of proof on that.  I don't know what he has, but I looked at those cases on there and the case numbers.  For whatever it is worth, they – they have an "M" in the case number; and my many years of experience in criminal law tends

to indicate "M" means "misdemeanor". I'm not so sure about domestic-violence offenses. Maybe Mr. Hauser can enlighten us.

PROBATION OFFICER: I, too, saw that.

THE INTERPRETER: I'm sorry? I couldn't hear.

PROBATION OFFICER: I have seen the capital "M" in the case numbers; and I called the District of Puerto Rico, the Probation Office, and they assured me that in their district she – these cases are considered felonies.

The one case, he reportedly – the Defendant reportedly punched Mrs. Leto-Rodriquez in the mouth and other parts of her body and then made the statements, "I am leaving; but when I come back, I will kill you."

MR. CHRISTIAN: May I –

THE INTERPRETER: What's that?

MR. CHRISTIAN: I'll wait until Mr. Hauser is finished.

PROBATION OFFICER: That information was taken from the court documents that everybody has; and from the definition of "a crime of violence," the potential for violence is certainly in that case.

I would like to just reiterate what the District of Puerto Rico indicated concerning that is a felony. That's not a misdemeanor from their point of view.

Nonetheless, he has two predicate offenses and two burglaries which are out, which would make him a career offender either way.

THE COURT: All right.

MR. CHRISTIAN: Your Honor, I stand on my objection. There's nothing, I don't think, in Mr. Hauser's representation that indicates that these offenses are a felony. They – they were resolved by fines. One of them, I think, was a $50 fine. One was like a $500 – or $150 fine. And then I'm looking at June 8, 1992, aggravated aggression, less serious, a $50 fine plus costs. And, Your Honor, if you can bear with me a moment, I'll find the other one.

(Pause.) Oh, yes, Your Honor, This would be the case – a case resolved on – also on June 8th, 1992; and it was $150 plus

costs, and that case was trying to find a confession of culpability. I'm just trying to find the actual disposition charge on that, and I can't seem to find it; but it's – also, I'd like to point out for the record that the complaint numbers, 926021-000469, are identical on two of the documents that was furnished to me by Mr. Hauser.

One of them has a disposition of $150 fine, and one of them has a disposition of a $50 fine. Both of them plus court costs. Only one of them has a charge, the one with a $50 fine; and that is aggravated aggression, less serious. If that doesn't sound like a misdemeanor, I don't know what does; but I would again respectfully submit there has been nothing here to show that these are felony offenses.

THE COURT:      All right.   I find that the record establishes that the two burglaries were in his previous record, and that supports a career-offender status. Any other objections to the guidelines?

MR. CHRISTIAN:  No, Your Honor, and I'm just – we just want to make it clear on the record that the two burglaries have two separate complaint numbers; and they do appear by all possible investigation I can make from the translations here, that they are separate offenses. So, I don't have anything else, Your Honor.

THE COURT:      All right.

Petitioner is factually incorrect because Petitioner's counsel did object to the calculation of the drug quantity. There is no proof of ineffective assistance of counsel when an attorney raises an objection and it is denied. Strickland v. Washington, 466 U.S. 668, 697 (1984). If the Court is wrong, the Petitioner can appeal, which he did and lost. In any event, Petitioner cannot demonstrate prejudice as to the finding of drug quantity because he was sentenced based on his status as a career criminal offender and not on the basis of the drug quantity. Therefore, ground six will be denied.

## <u>CONCLUSION</u>

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

3.      The Clerk is directed to terminate from pending status the motion to vacate found at Dkt.#565, in the underlying criminal case, case number 8:04-CR-457-T-30EAJ.

**DONE** and **ORDERED** in Tampa, Florida on January 8, 2009.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>Copies furnished to:</u>
Counsel/Parties of Record

F:\Docs\2008\08-cv-1828.deny 2255.wpd